**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Bankr. Case No. 17-11933-MSH |
| LAURENCE C. CREUTZ, | ) | |
| | ) | Chapter 13 |
| Debtor, | ) | |
| | ) | |
| | ) | |
| LAURENCE C. CREUTZ, | ) | A. P. No.  17-01110 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| AS TRUSTEE ON BEHALF OF THE HOLDERS | ) | |
| OF THE ASSET BACKED SECURITIES | ) | |
| CORPORATION HOME EQUITY LOAN | ) | |
| TRUST, SERIES AMQ 2006-HE7 ASSET | ) | |
| BACKED PASS-THROUGH CERTIFICATES, | ) | |
| SERIES AMQ 2006-HE7, and | ) | |
| SELECT PORTFOLIO SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT**
**OF DEFENDANTS U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, AND**
**SELECT PORTFOLIO SERVICING, INC.**

**I.  INTRODUCTION**

Plaintiff Laurence C. Creutz ("Creutz") fails to state a claim for recovery against U.S.

Bank National Association, as Trustee (the "Trustee"), and Select Portfolio Servicing, Inc.

("SPS"), as the current holder by assignment and current servicer of the mortgage loan,

respectively, executed by Creutz on August 25, 2006.  Creutz fails to allege any actions by either

the Trustee or SPS that violated the legal rights of Creutz.  Rather, all of the alleged misconduct

involved the original lender and mortgage broker at origination of the mortgage loan.  Creutz in

conclusory fashion in each count of the Complaint generally asserts that the Trustee or SPS "is liable for these origination claims." The Trustee, as assignee of the mortgage loan, and SPS as the servicer are not liable for origination claims. In addition, any claims asserted based on the origination of the mortgage are time-barred by the applicable statutes of limitations. Creutz also states no basis to reform the mortgage loan to reduce the debt owed.

## II. FACTUAL ALLEGATIONS AND BACKGROUND

In 2006, Creutz obtained the assistance of mortgage broker Golden State Lending Group to refinance existing mortgage loan debt by entering into a new mortgage loan. (Adversary Complaint, ¶¶ 12-33). On August 25, 2006, Creutz granted to Argent Mortgage Company, LLC, as the originating lender, a mortgage on the property described as 114 Hawthorne Street, East Weymouth, Massachusetts (the Property") to secure obligations under a promissory note in the original principal amount of $343,800.00 (the "Mortgage"). The Mortgage was recorded on September 7, 2006. (Mortgage, attached at **Exhibit A**).[1] The Trustee became the holder of the promissory note, and Argent Mortgage assigned the Mortgage to the Trustee as documented in an Assignment of Mortgage recorded on January 21, 2015. (Assignment, attached at **Exhibit B**).

Upon closing the loan in August 2006, Creutz immediately realized that the mortgage loan was not affordable, and experienced financial difficulties with the monthly payments. (Adversary Complaint, ¶¶ 65-67). Creutz contacted representatives of Golden State Lending Group to explore a refinance of the loan "into one that would be affordable" as instructed at origination. (Adversary Complaint, ¶ 67). After Creutz made the second mortgage payment,

---

[1] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993).

"Golden State Lending Group was no longer in business" and subject to investigations, fines, and sanctions by HUD. (Adversary Complaint, ¶¶ 70, 75). Creutz made several unsuccessful attempts to refinance, and suffered severe depression. (Adversary Complaint, ¶¶ 73, 74).

Thereafter, SPS became the duly-authorized servicer for the Mortgage. (Adversary Complaint, ¶ 76). In 2008, Creutz "wrote to SPS and described in detail all of what had transpired and why the loan was unaffordable." (Adversary Complaint, ¶ 77). Creutz sought and applied for loan modification assistance through SPS. (Adversary Complaint, ¶ 80). The parties subsequently entered into a modification agreement for the Mortgage on July 1, 2010. (Adversary Complaint, ¶¶ 81). Creutz experienced difficulty making the modified mortgage payments due to health issues that impacted his employment. (Adversary Complaint, ¶¶ 82-85). Creutz defaulted under the modification agreement, and sought a further modification. (Adversary Complaint, ¶ 95). SPS offered Creutz an additional modification, but Creutz claimed that he never received the offer and it timed-out. (Adversary Complaint, ¶¶ 95-97). SPS instead offered Creutz other loss mitigation options to avoid foreclosure. (Adversary Complaint, ¶ 98).

When SPS notified Creutz of the commencement of foreclosure, Creutz "filed a Chapter 13 bankruptcy to save his home and raise these origination claims against the current holder of his mortgage note." (Adversary Complaint, ¶ 100). On September 8, 2017, Creutz filed the Complaint to commence this Adversary Proceeding based solely on claimed assignee liability.

### III.    LAW AND ARGUMENT

A.    <u>Standard of Review</u>

Whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-557 (2007); <u>Ocasio–Hernández v. Fortuño–Burset</u>, 640 F.3d 1, 8–9 (1st Cir.2011). A complaint

must allege facts that "raise a right to relief above the speculative level." Twombly, 550 U.S. at

557. This standard "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." Id. Factual allegations contained in a complaint

must be specific enough to cross "the line from conceivable to plausible." Twombly, 550 U.S. at

570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where a

complaint pleads facts that are 'merely consistent with' defendant's liability, it 'stops short of the

line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678

(quoting Twombly, 550 U.S. at 557). A complaint that states "threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements" does not survive dismissal.

Iqbal, 556 U.S. at 678. A court may disregard "bald assertions, unsupportable conclusions, and

opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008). "If the factual

allegations in the complaint are too meager, vague, or conclusory to remove the possibility of

relief from the realm of mere conjecture, the complaint is open to dismissal." S.E.C. v.

Tambone, 597 F.3d 436, 442 (1st Cir.2010).

Here, even accepting the well-pleaded factual allegations as true, the claims asserted by

Creutz fail to state a claim for recovery as a matter of law.

B.      SPS and the Trustee Are Not Liable for Origination Claims

SPS is the servicer for the Trustee, as the assignee of the Mortgage, and is not the

assignee of the 2006 mortgage loan. Therefore, Creutz fails to establish any assignee liability of

SPS. See, e.g., Drakopoulos v. U.S. Bank N.A., 465 Mass. 775, 782, 991 N.E.2d 1086 (2013)

(affirming summary judgment entered in favor of servicer of assignee of a mortgage loan

"because nothing in the record permits us to conclude that the servicer was an assignee of the loan and would have liability as such[.]"); see also Okoye v. Bank of New York Mellon, 2011 WL 3269686, at *17 (D.Mass. July 28, 2011) ("Thus, Litton [as the loan servicer] cannot be held liable under [G.L. c. 183C] unless the Okoyes demonstrate that Litton purchased or was assigned the loan.").

Likewise, the Trustee as assignee of the mortgage loan is not liable to Creutz for the alleged conduct of the original lender or the mortgage broker at origination in 2006. See Serra v. Quantum Servicing Corp., 747 F.3d 37, 41 (1st Cir.2014); see also Azevedo v. U.S. Bank N.A., 167 F.Supp.3d 166, 170 (D.Mass. 2016) ("First, Defendants are not liable under Chapter 93A for Argent's conduct merely by virtue of their status as assignees of the Mortgage and successors in interest to Argent."). The claims asserted are based solely on the theory that Golden State Lending Group as mortgage broker and perhaps Argent Mortgage as the original lender engaged in unfair or deceptive conduct in 2003 in originating the mortgage loan because Creutz was allegedly granted a mortgage loan he could not afford. Creutz does not allege that the Trustee, or SPS for that matter, was involved with originating the mortgage loan in 2006. Even taking the allegations as true for the purpose of this motion, the Trustee, as assignee, is not liable for the alleged unfair or deceptive conduct of the originating parties. Creutz fails to state a plausible claim for recovery. See Ford Motor Credit Co. v. Morgan, 404 Mass. 537, 545, 536 N.E.2d 587 (1989) (ruling that while the plaintiff "may have a valid c. 93A claim against the [car] dealer, we reject the claim that such liability should be extended to the dealer's assignee" because the common law principle that the assignee stands in the assignor's shoes "has never been interpreted to mean that the assignee will be liable for all the assignor's wrongs."). See also Ossers v. Litton Loan Servicing, LP, 30 Mass.L.Rptr. 361, 2012 WL 4928874, at * 6 (Mass.

Super. Oct. 5, 2012) ("as an initial matter the court notes that neither BNY nor Litton [the assignees] can be liable under Chapter 93A based upon either of Ossers' arguments because they were not involved in issuing the Loans.") (citations omitted); In re Mae, 460 B.R. 1, 4 (Bankr.D.Mass.2011) ("Liability under G.L. c. 93A may not be predicated solely on the fact that defendant is the assignee of another whose conduct violated that statute."); Drakopoulos, 465 Mass. at n. 16 (2013) ("Where an assignee played no part in the unfair or deceptive acts of an assignor, principles of assignee liability ordinarily will not render the assignee liable for affirmative damages for those acts.").

    C.    <u>All Origination Claims are Time-Barred</u>

Even if SPS and the Trustee somehow were derivatively liable for the origination conduct occurring in 2006, all potential origination claims are time-barred as a matter of law. The mere fact that Creutz asserts affirmative claims to defend against the enforcement of the mortgage loan by the Trustee does not vitiate the expiration of the statutes of limitations. Creutz stands in the same procedural posture as the debtor who filed the adversary complaint in In re Sheedy, and the same analysis by the First Circuit applies here to bar all claims asserted by Cruetz. In re Sheedy, 801 F.3d 12, 20-21 (1st Cir.2015).

The statute of limitations for the tort claims of negligence (Count II), fraud (Count III), and civil conspiracy (Count IV) is three (3) years. G.L. c. 260, § 2A. The statute of limitations for claims under G.L. c. 93A is four (4) years. G.L. c. 260, § 5A. Although the claims are styled over various counts, at bottom, Creutz asserts that the August 25, 2006 refinancing was predatory because it was unaffordable at origination and granted based on inflated income figures. The statute of limitations on all claims arising out of or related to the origination of the mortgage loan accrued when the loan closed on August 25, 2006. See Da Silva v. U.S. Bank,

N.A., 885 F.Supp.2d 500, 504 (D.Mass. 2012) ("A violation involving an issuance of a loan

begins to accrue from the moment the parties entered into the loan."). Creutz was required to

bring all tort claims arising out of the August 25, 2006 refinancing by no later than August 25,

2009, and any c. 93A claim by no later than August 25, 2010. Consequently, all origination

claims were already time-barred when Creutz first asserted them on September 8, 2017. See also

Rife v. One West Bank, F.S.B., 873 F.3d 17 (1st Cir.2017) (rejecting tolling of statute of

limitations under c. 183C where the facts underlying plaintiff's predatory lending claim were

contained in the mortgage documents); Azevedo, 167 F.Supp.3d at 170 (c. 93A claim involving

alleged predatory lending based on 2005 mortgage loan in an action filed in 2015 time-barred).[2]

Separate and apart from the accrual of the statute of limitations upon the loan closing on

August 25, 2006, Creutz concedes in his pleading actual knowledge of the alleged

unaffordability defects dating back over ten (10) years. Creutz immediately knew that the

mortgage loan was unaffordable upon making the first payment in 2006. Accordingly, Creutz

promptly began to take steps to refinance the loan, but Golden State Lending Group went out of

business due to regulatory action. In 2008, Creutz explained to SPS "all of what had transpired"

involving Golden State Lending Group and the alleged unaffordable nature of the loan. The

efforts by Creutz resulted in a loan modification granted through SPS effectuated in July 2010,

and Creutz made the payments as agreed. Thus, by no later than 2010, Creutz knew of "these

origination claims" brought in this action, but Creutz chose to wait seven (7) more years to seek

judicial relief after all deadlines had already expired. See Salois v. Dime Savings Bank of New

---

[2] Although Creutz has not pleaded a statutory claim or alleged facts to establish a high cost
mortgage loan to trigger a claim for assignee liability under the Massachusetts Predatory Home
Loan Practices Act at G.L. c. 183C, which may serve as the predicate for a c. 93A claim, any
claim under the Act must be filed within five (5) years of the closing of the home loan. G. L. c.
183C, § 15(b)(1). See also Da Silva, 885 F.Supp.2d at 504. Therefore, any possible statutory
claim expired on August 25, 2011.

York, FSB, 128 F.3d 20, 24 (1st Cir.1997) ("[W]hether negative amortization was inevitable

with Impact Loans, the documents contained all of the information necessary to determine the

interaction of Dime's formula with prevailing interest rates. It was attorney consultation, rather

than newly-discovered information, that prompted plaintiffs' lawsuit. Therefore, sufficient

facts—indeed, all the facts—were available to place plaintiffs on inquiry notice of fraudulent

conduct."); Broderick v. PNC Fin. Servs. Grp., 919 F. Supp. 2d 178, 181 (D.Mass. 2013)

("Reasonable inquiry, such as reading the documents, would have revealed the terms of the loan.

Broderick thus should have known of her injury at the time of the loan closing."); Latson v.

Plaza Home Mortg., Inc., 708 F.3d 324, 327 (1st Cir.2013) ("Here the interest terms and the

implications of their burdens were apparent when the [borrowers] signed and got their money, a

conclusion underscored by the Massachusetts rule that the terms of written agreements are

binding whether or not their signatories actually read them.") (citing St. Fleur v. WPI Cable

Sys./Mutron, 450 Mass. 345, 879 N.E.2d 27, 35 (2008)); Maldonado v. AMS Servicing LLC,

C.A. No. 11–40044–FDS, 2012 WL 220249, at *5 (D.Mass. Jan. 24, 2012) ("The fact that

plaintiffs did not have the loan 'analyzed' for several years is irrelevant, given that the facts

constituting the alleged violation would have been evident from the loan documentation.").

    D.      The 2010 Loan Modification Agreement Precludes the Origination Claims

        Creutz knew of the alleged deficiencies in the mortgage loan of which he now complains,

yet he executed and agreed to the terms and conditions of the 2010 loan modification agreement.

Cruetz essentially restated the debt owed, but with revisions to the payment obligations that

inured to his substantial benefit.  Creutz paid under the loan modification agreement.  Now,

Creutz suddenly seeks to disavow, in its entirety, the same mortgage loan for which he sought

and received loan modification relief.  Although not squarely on point, the recent decision in

Barrasso v. New Century Mortgage Corp., 91 Mass.App.Ct. 42, 47-48, 69 N.E.3d 1010, rev.

denied 477 Mass. 1104 (2017) is instructive.  In Barrasso, the borrower executed a loan

modification agreement that identified the assignee of the mortgage loan.  When the borrower

defaulted and the assignee sought to enforce the mortgage loan, the borrower contested the

assignee's authority to foreclose as mortgagee.  The court in Barrasso rejected the challenge, and

held that the borrower was estopped from denying the validity of a mortgage assignment and

power to foreclose where the borrower entered into the loan modification agreement with

foreclosing mortgagee.  The court further ruled that, "Having accepted and benefited from a

modification of the Mortgage offered by LaSalle in 2007, Barrasso cannot now escape

enforcement of the Mortgage by questioning LaSalle's ownership of it as of the effective date of

the modification."  Similar reasoning should apply in this case to preclude Creutz from avoiding

recovery by the Trustee on the same mortgage loan that Cruetz expressly acknowledged was due

and owing though the loan modification agreement.

      E.      Cruetz Cannot Rewrite the Mortgage

      Cruetz states no legal basis to reform the Mortgage to excise payment terms that Cruetz

contends render the mortgage loan unaffordable, and to reduce the amounts due and owing.  The

equitable remedy of contract reformation is inconsistent with the damages claims at law asserted

in the Complaint.  (Adversary Complaint, ¶ 142).  They are not merely alternate theories.

Nonetheless, under settled Massachusetts law, reformation is only available where there exists a

mutual mistake by the parties to the contract.  See One Beacon America Ins. Co. v. Travelers

Indem. Co. of Illinois, 475 F.3d 38, 41 (1st Cir.2006) (citing and quoting Polaroid Corp. v.

Travelers Indem. Co., 414 Mass. 747, 610 N.E.2d 912, 917 (1993)) (a written contract may be

reformed if its language "does not reflect the true intent of both parties" and a party must

"establish that the undisputed material facts fully, clearly, and decisively show [ ] a mutual

mistake."). The Adversary Complaint does not allege any facts to sustain a mutual mistake.

## IV.    CONCLUSION

For the foregoing reasons, Defendants U.S. Bank National Association, as trustee, and

Select Portfolio Servicing, Inc. request this Court to dismiss the Adversary Complaint in this

adversary proceeding in its entirety with prejudice.

Respectfully submitted,

**U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE, and
SELECT PORTFOLIO SERVICING, INC.,**

By their attorneys,

/s/ Peter F. Carr, II
Peter F. Carr, II (BBO # 600069)
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Two International Place, 16th Floor
Boston, MA  02110-2602
Telephone: 617.342.6800
Facsimile: 617.342.6899
pcarr@eckertseamans.com

Dated:  November 13, 2017

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those parties which are as non-registered participants.

Date:    November 13, 2017                    /s/ Peter F. Carr, II
                                             Peter F. Carr, II