## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 17-11933-MSH |
| LAURENCE C. CREUTZ | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| LAURENCE C. CREUTZ | ) | |
| Plaintiff | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. 17-1110 |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| TRUSTEE FOR THE HOLDERS OF THE | ) | |
| ASSET BACKED SECURITIES | ) | |
| CORPORATION HOME EQUITY LOAN | ) | |
| TRUST, SERIES AMQ 2006-HE7 ASSET | ) | |
| BACKED PASS-THROUGH | ) | |
| CERTIFICATES, SERIES AMQ 2006 | ) | |
| HE7, AND SELECT PORTFOLIO | ) | |
| SERVICING, INC. | ) | |
| Defendants | ) | |
| | ) | |

### MEMORANDUM OF DECISION ON THE DEFENDANTS' MOTION TO DISMISS

Before me is the motion of the defendants, U.S. Bank National Association, trustee for

the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series AMQ

2006-HE7 Asset Backed Pass-Through Certificates, Series AMQ 2006-HE7 ("U.S. Bank"), and

Select Portfolio Servicing Inc. ("SPS") to dismiss this adversary proceeding pursuant to Fed. R.

Civ. P. 12(b)(6) made applicable to this proceeding by Fed. R. Bankr. P. 7012. Laurence C.

Creutz, the plaintiff and the debtor in the main case, opposes the motion. The issues are whether

U.S. Bank, as assignee of a note and mortgage upon which Mr. Creutz is, respectively, obligor

and mortgagor, and SPS, as loan servicer, are liable for the alleged misconduct of the loan

originator and the original lender, whether U.S. Bank's proof of claim against Mr. Creutz can be

reduced in whole or in part by a damage award in Mr. Creutz's favor and whether the loan can be

rescinded or modified.

Background

The facts set forth in the complaint[1] are disorganized and incomplete but as this is a

motion to dismiss, I rely on them as best I can. I also rely on the matters of record on the dockets

in this adversary proceeding and the main case of which I may take judicial notice, including the

2006 mortgage instrument, a copy of which is attached both to U.S. Bank's proof of claim and to

the defendants' motion to dismiss.[2]

In 2006 Mr. Creutz was having difficulty paying his bills. A company called Golden

State Lending Group approached him about consolidating his debt by refinancing the mortgage

loan on his Weymouth, Massachusetts home. Mr. Creutz informed the Golden State

---

[1] The title of the pleading initiating this adversary proceeding is "Objection to Anticipated Proof
of Claim and Counterclaim" but it is in form and substance and has been treated for all purposes
by the parties as a complaint.

[2] *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a
complaint's factual allegations are expressly linked to—and admittedly dependent upon—a
document (the authenticity of which is not challenged), that document effectively merges into the
pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

representative that his gross monthly income was $3,958, that he did not anticipate any future

increase in income and that he needed his monthly payment for a refinanced mortgage loan to be

no more than $1,500, which was approximately the amount he was paying at the time on his

mortgage, including insurance and taxes. He provided Golden State with copies of his tax returns

and IRS W-2 forms.

A representative of Golden State informed Mr. Creutz that if he entered into a refinance

transaction, at first his payments would not be affordable but by paying off all of his debts

through the refinance and making a few mortgage payments his credit score would rise and after

a short period of time he could refinance the loan again at a more affordable interest rate. Rick

Pearse,[3] a supervisor at Golden State, told Mr. Creutz that because of his poor credit score, he

would need to "buy down" the rate at which he could borrow money in a refinance transaction

by paying points. Mr. Creutz did not understand what points were or how much they would cost.

Mr. Creutz agreed to go forward with the refinance transaction and it closed in August of

2006. The note was in the principal amount of $343,800 and was secured by a first mortgage on

Mr. Creutz's Weymouth home. The lender was Argent Mortgage Co. LLC. The note carried an

interest rate of 7.5% per annum for the first three years. It provided that the rate would adjust

every six months thereafter based upon the London Interbank Offered Rate (LIBOR) up to a

maximum of 13.5% per annum. The rate was never to fall below 7.5%. Mr. Creutz's initial

monthly mortgage payment was $2,262, not including insurance and taxes. The closing occurred

---

[3] The complaint identifies the Golden State supervisor with whom Mr. Creutz dealt alternatively
as "Rick Pearse" or "Rick Pierce."

in Mr. Creutz's home and was conducted by a notary public. She explained nothing to Mr. Creutz about the loan but simply placed numerous papers in front of him and asked him to sign them, which he did. From the loan proceeds Mr. Creutz paid closing costs of $16,246, including $3,438 as a "loan discount fee" and $8,595 as an "origination fee to broker."

Following the closing of the refinance transaction with Golden State, Mr. Creutz discovered that the loan application he had signed at the closing (but apparently did not read) misstated both the amount of his prior monthly mortgage payment, listing it as $2,323 rather than $1,500, and his monthly income, describing it only as "other" income instead of wages and inflating the amount to $6,038.94 from the actual amount of $3,958.

Mr. Creutz initially used the cash proceeds from the 2006 loan to make his monthly mortgage payments but soon began to struggle to keep up with the payments. Mr. Creutz contacted Golden State to initiate a refinance of his loan in order to reduce his monthly payments as he had been promised. Mr. Pearse of Golden State informed Mr. Creutz that because there was no equity in his Weymouth property Mr. Creutz was not eligible to refinance the loan. Shortly thereafter, Golden State went out of business.

At some point SPS became the servicer of Mr. Creutz's mortgage loan. In 2008 Mr. Creutz wrote to SPS explaining the history of his loan and his inability to afford the monthly payments. In 2010 SPS granted Mr. Creutz a loan modification. Thereafter, suffering from illness and loss of employment, Mr. Creutz again fell behind on his loan payments.

In 2013, Mr. Creutz was approved to receive monthly social security disability payments. His first SSDI check included retroactive payments which enabled him to bring his mortgage loan current. His monthly SSDI income, however, was only about $2,000 and so inevitably he

4

fell back into default. At that point SPS informed Mr. Creutz that he was eligible for a "Tier II modification" under which his monthly mortgage payment, including escrows, would be $1,500 a month, an amount Mr. Creutz believed he could afford. SPS informed Mr. Creutz that it had mailed him the Tier II modification papers. Mr. Creutz did not receive the papers and when he requested they be re-sent, SPS told him that it could not do so. SPS informed Mr. Creutz that his only remaining options to avoid a foreclosure were to sell his Weymouth property in a short sale or tender a deed in lieu of foreclosure. Mr. Creutz did neither and on May 24, 2017, filed a voluntary petition under chapter 13 of the United Stated Bankruptcy Code commencing the main case.[4]

On September 8, 2017, Mr. Creutz filed his complaint commencing this adversary proceeding against U.S. Bank and SPS asserting counts for: (i) disallowance of U.S. Bank's proof of claim; (ii) negligent and reckless loan underwriting; (iii) fraud; (iv) civil conspiracy; and (v) unfair and deceptive acts in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"). By way of relief he seeks actual and punitive damages and attorneys' fees, rescission, reduction of the proof of claim and modification of the 2006 loan to set an affordable monthly payment.

<u>Positions of the Parties</u>

The defendants seek dismissal of the complaint, arguing that Mr. Creutz has failed to assert any claim against them that could succeed as a matter of law. Relying on *Ford Motor*

---

[4] References to the Bankruptcy Code or the Code refer to 11 U.S.C. § 101 *et seq.*

*Credit Co. v. Morgan*, 404 Mass. 537 (1989), they argue that under common law principles of

assignee liability they cannot be held responsible for the acts of Golden State or Argent. They

also argue that the claims against them are time-barred under applicable statutes of limitation.

Further, because there is no allegation of mutual mistake, defendants say there is no basis for this

court to reform the loan. Finally, defendants contend that by virtue of the 2010 loan modification

Mr. Creutz may not now assert claims based on the 2006 loan.

Citing *Drakopoulos v. U.S. Bank N.A.*, 465 Mass. 775 n.16 (2013), Mr. Creutz asserts

that U.S. Bank, as assignee, and SPS, as agent of the assignee, are liable for the conduct of

Golden State and Argent under common law principles of assignee liability. Relying on

*Commonwealth v. Fremont Inv. & Loan*, 452 Mass. 733, 748-49 (2008), he contends that the

conduct of Golden State and Argent in connection with the 2006 loan and its aftermath was

presumptively unfair and deceptive under Chapter 93A. He alleges that because SPS knew the

circumstances surrounding the origination of the 2006 loan and in any event its defects were

obvious from the loan application, that knowledge is sufficient to impose assignee liability on

SPS as the servicer.

Mr. Creutz argues that it was SPS's actions in advising him it would foreclose that

actually caused him harm. Presuming that U.S. Bank as the holder of the loan controlled SPS's

activity in connection with the loan, Mr. Creutz concludes that U.S. Bank should be held

vicariously liable for SPS's behavior under the doctrine of *respondeat superior*. Furthermore,

and apart from U.S. Bank's purported vicarious liability, Mr. Creutz alleges that U.S. Bank knew

or should have known of the predatory nature of the 2006 loan and as a result bears independent

liability. Finally, Mr. Cruetz maintains that SPS is a necessary party in this proceeding and its

absence would render an adequate equitable remedy impossible.

Addressing the statute of limitations argument, Mr. Creutz characterizes his causes of

action as compulsory counterclaims in the nature of recoupment to U.S. Bank's proof of claim

and thus argues they are not barred by any statute of limitations.[5] Mr. Creutz does not address

the defendants' argument that the 2010 loan modification precludes liability for acts undertaken

by Golden State and/or Argent in connection with the 2006 loan.

Discussion

In ruling on the motion to dismiss, I must accept all factual allegations in the complaint

as true and draw all reasonable inferences in Mr. Creutz's favor. *Langadinos v. American*

*Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir. 2000). The complaint cannot be dismissed if Mr. Creutz

has demonstrated a "plausible entitlement to relief." *Sanchez v. Pereira–Castillo*, 590 F.3d 31,

---

[5] Mr. Creutz's complaint refers to his counterclaim as an action for "set off." In his
memorandum of opposition to the motion to dismiss, he uses the terms "off set" and
"recoupment" interchangeably. At oral argument Mr. Creutz's counsel argued that the
counterclaim was for recoupment. Setoff and recoupment are two distinct concepts. Setoff is a
"counter-claim demand which defendant holds against plaintiff, arising out of a transaction
*extrinsic of plaintiff's cause of action.*" *United Structures of America, Inc. v. G.R.G. Eng'g, S.E.*,
9 F.3d 996, 998 (1st Cir. 1993) (emphasis in original) (citing Black's Law Dictionary 1230 (5th
ed. 1979)). Recoupment is a defense, generally applied in contract actions, that results in a
"reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the
defendant *arising out of the same transaction." Id.* (emphasis in original) (citing Black's Law
Dictionary 1147 (5th ed. 1979)). It is not barred by a statute of limitations as long as the
underlying action is timely. *Bull v. United States,* 295 U.S. 247, 262 (1935). Since leave to
amend a complaint is ordinarily freely granted, I will treat Mr. Creutz's claim as one for
recoupment.

41 (1st Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). Conclusory or speculative allegations, however, must be disregarded. *Serra v. Quantum Servicing, Corp.*, 747 F.3d 37, 39-40 (1st Cir. 2014).

All the alleged improper and illegal behavior described by Mr. Creutz in his complaint was perpetrated by Golden State or Argent, neither of which is a party in this proceeding. Mr. Creutz seeks to hold U.S. Bank and SPS liable either because they had "actual or constructive knowledge" of the "underwriting defects" in connection with the 2006 refinance transaction (Complaint par. 118) or because "U.S. Bank and/or SPS as the purported holder of the note is [sic] liable for these origination claims." (Complaint pars. 128, 134 and 141).

Mr. Creutz's attempt to treat U.S. Bank and SPS as a unitary holder of his note cannot succeed. As he himself states in paragraphs 5 and 6 of his complaint, U.S. Bank is the holder of the note by assignment and SPS is the servicer of the loan. A loan servicer cannot be charged with liability for the misconduct of a loan originator or lender with whom it had no relationship. *Drakopoulos*, 465 Mass. at 782 and n.12. Mr. Creutz does not allege that SPS had any relationship with Golden State or Argent. Assuming, as Mr. Creutz alleges, that when SPS arrived on the scene as loan servicer sometime after the loan had been sold, it became aware of the improper actions of Golden State and Argent, such knowledge would not create liability on the part of SPS. *Id.* As the complaint fails to state a claim with respect to SPS, the motion to dismiss as to SPS will be allowed.

Matters become somewhat more nuanced with respect to U.S. Bank due to its status as the holder by assignment of Mr. Creutz's note. Fortunately, Massachusetts law, which governs

most of the claims being asserted by Mr. Creutz, is well developed in this area. In *Drakopoulos* the Massachusetts Supreme Judicial Court noted:

> Where an assignee played no part in the unfair or deceptive acts of an assignor, principles of assignee liability ordinarily will not render the assignee liable for affirmative damages for those acts. See *Ford Motor Credit Co. v. Morgan,* 404 Mass. 537, 545, 536 N.E.2d 587 (1989) ("The common law principle that the assignee stands in the assignor's shoes means only that the debtor can raise the same defenses against the assignee as he could have raised against the assignor.... It has never been interpreted to mean that the assignee will be liable for all the assignor's wrongs").

*Drakopoulos*, 465 Mass. at 787 n. 16.

By coincidence, Drakopoulos involved the same actors as are the subject of the action here, U.S. Bank and its servicer, SPS. The Drakopouloses sued them in state court as successors of the prior note holder and loan originator for actions of the predecessors not dissimilar to those alleged by Mr. Creutz in this proceeding. But unlike Mr. Creutz, whose claims are based on a single Massachusetts statute, Chapter 93A, the Drakopouloses deployed a veritable statutory arsenal alleging violations under the state's Predatory Home Loan Practices Act, Mass. Gen. Laws ch. 183C, (PHLPA), the Borrower's Interest Act, Mass. Gen. Laws ch. 183, § 28C, and the foreclosure statute, Mass. Gen. Laws ch. 244, § 35A, in addition to Chapter 93A.

The Drakopouloses' assertion of PHLPA violations turned out to have been crucial to their case. The state trial court relied on the common law principle of assignee liability described above to grant the defendants' motion for summary judgment. But the Supreme Judicial Court reversed because § 15(a) of the PHLPA expressly imposes liability on assignees ("Any person who purchases or is otherwise assigned a high-cost home mortgage loan shall be subject to all

affirmative claims and any defenses with respect to the loan that the borrower could assert

against the original lender. . . .”). Mass. Gen. Laws ch. 183C, § 15(a). The court ruled that:

> To the extent that the bank may thus have liability as an assignee by virtue of the
> act, it would extend to “all affirmative claims and defenses with respect to the loan”
> that the plaintiffs could assert against the lender, including the statutory claims
> asserted under the Consumer Protection Act, G.L. c. 93A; and the Borrower's
> Interest Act, G.L. c. 183, § 28C, as well as the affirmative defense of
> unconscionability . . . Given this, allowing summary judgment in the bank's favor
> on those three claims, to the extent that it is based on the bank's status as assignee,
> is premature.

*Drakopoulos,* 465 Mass. at 782.

Mr. Creutz’s complaint does not assert claims under the PHLPA. Indeed, at oral

argument on the defendants’ motion to dismiss, counsel for Mr. Creutz reiterated that the only

statutory predicate for his client’s claims was Chapter 93A. Accordingly, Mr. Creutz has no legal

basis for his affirmative damage claims against U.S. Bank in its capacity as assignee. On the

other hand, and as will be discussed further in connection with his recoupment defense to U.S.

Bank’s proof of claim, Mr. Creutz’s may assert his Chapter 93A claims defensively against U.S.

Bank for purposes of reducing or eliminating amounts claimed by U.S. Bank. As the

*Drakopoulos* court noted:

> Even where the unfair or deceptive acts were committed wholly by an assignor,
> based on common-law principles of assignee liability, assignees may be liable
> under G.L. c. 93A for equitable remedies such as cancellation of a debt or rescission
> of a contract. See [*Ford Motor Credit Co.*] at 540, 545–546, 536 N.E.2d 587 (judge
> did not err in ordering counterclaims, including counterclaim brought under G.L.
> c. 93A, § 2, to be used only defensively to extinguish assignee creditors’ claim for
> remaining debt).

*Drakopoulos*, 465 Mass. 787 n.16.

10

Finally, the complaint fails to provide any legal basis to reform the note or mortgage. There is no allegation of a mutual mistake, which is a prerequisite to the reformation of a contract. *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 756 (1993).

Based on the foregoing analysis, counts II through V of Mr. Creutz's complaint fail to state claims as a matter of law and will be dismissed. Having reached this conclusion, it is not necessary for me to rule on the defendants' statute of limitations and release-by-loan-modification arguments with respect to these counts.

With respect to count I, Mr. Creutz invokes a bankruptcy-specific procedure. He seeks the disallowance of U.S. Bank's proof of claim. Mr. Creutz's objection to U.S. Bank's proof of claim grows out of the 2006 loan transaction and thus sounds in recoupment.[6] Recoupment, however, does not provide for an affirmative recovery. *John W. Fidler, Helen M. Fidler v. Cent. Coop. Bank (In re Fidler)*, 226 B.R. 734, 737 (Bankr. D. Mass. 1998). Nor does it encompass an action for rescission. *DiVittorio v. HSBC Bank USA, NA (In re DiVittorio)*, 670 F.3d 273, 290 (1st Cir, 2012); *May v. SunTrust Mortg., Inc.*, 467 Mass. 756, 763-64 (2014). On the other hand, while *Ford Motor Credit Co.* instructs that there is no assignee liability based solely on the acts of the assignor, the case also recognizes that an assignee takes its claim subject to defenses that could be raised against its assignor. 404 Mass. at 545. "The common law principle that the assignee stands in the assignor's shoes means only that the debtor can raise the same defenses against the assignee as he could have raised against the assignor." *Id.*; s*ee also Drakopoulos*, 465

---

[6] *See supra* note 5.

11

Mass. at 787 n.16. Thus, on the record before me it is plausible that to the extent U.S. Bank's claim rests on the 2006 note and mortgage, its claim is subject to recoupment based on Mr. Creutz's Chapter 93A claims.

As to U.S. Bank's statute of limitations and release-by-loan-modification arguments, with respect to count I of the complaint, they are unavailing. A defensive claim for recoupment is not barred by the statute of limitations as long as the underlying action is timely. *Bull v. United States*, 295 U.S. 247, 262 (1935). As for U.S. Bank's argument that the 2010 loan modification effected a release of Mr. Creutz's claims, the record before me is insufficiently developed to support such a finding. I do not have the loan modification agreement in order to determine if it contains release language.

U.S. Bank appears to suggest that by entering into and receiving the benefit of the loan modification Mr. Creutz should be estopped from challenging U.S. Bank's attempt to collect on its note. It relies on the Massachusetts Appeals Court's decision in *Barrasso v. New Century Mortgage Corp.*, 91 Mass. App. Ct. 42 (Mass. App. Ct. 2017), in support of its position. *Barrasso* dealt with a mortgagor's challenge to the mortgagee's attempt to collect on a mortgage based on a claim that the mortgagee did not own the mortgage. The Appeals Court very reasonably concluded that by entering into a loan modification agreement with the mortgagee and obtaining the benefit of the modification, the mortgagor was estopped from challenging the mortgagee's status as the holder of the mortgage. Mr. Creutz is not challenging U.S. Bank's status but rather the conduct of its assignor in making and administrating the loan. Nothing in *Barrasso* suggests that an estoppel theory can or should be extended that far, and in any case at

12

this stage I decline U.S. Bank's proposal that I do so. The defendants' motion will be denied as to Count I of the complaint.

Conclusion

The defendants' motion to dismiss will be granted as to SPS. As to U.S. Bank, the motion will be granted as to counts II through V of the complaint and denied as to count I. Separate orders shall enter.

At Boston, Massachusetts this 5th day of June, 2018.

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:    Todd Kaplan, Esq.
                      Greater Boston Legal Services
                      Boston, MA
                              for Plaintiff Laurence C. Creutz

                      Peter F. Carr, Esq.
                      Eckert Seamans Cherin & Mellott, LLC
                      Boston, MA
                              for Defendants U.S. Bank and Select Portfolio Servicing
                              Inc.

13